IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| G.S., by and through his parents, F.S and J.S, | : | CIVIL ACTION |
| | : | NO. 18-04104 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ROSE TREE MEDIA SCHOOL DISTRICT, JAMES WIGO, ELEANOR DIMARINO-LINNEN, RALPH HARRISON, ROBERT SALLADINO, and KATHERINE WHITE, | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |

**M E M O R A N D U M**

EDUARDO C. ROBRENO, J.                    JUNE 21, 2019


**I.    INTRODUCTION**

        Plaintiff in this case, G.S., is a 17-year-old high

school student who was expelled from Penncrest High School in

Media, Pennsylvania.  ECF No. 8.  On Sunday, April 1, 2018, G.S.

posted lyrics from the song "Snap" by the band Spite to his

Snapchat account.  Id. ¶ 38.  Defendants aver that G.S.'s post

stated:

                Everyone, I despise everyone!
                Fuck you, eat shit, blackout, the world is a
                graveyard!
                All of you, I will fucking kill off all of
                you!
                This is me, this is my, snap!

ECF No. 13-1 at 3 (emphasis added) (erroneously omitting the word "off"); ECF No. 6-2 (purportedly an image of the Snapchat post); see also ECF No. 8 ¶ 40.

According to G.S., one or more of his 65 Snapchat followers reposted his Snapchat post to other social media platforms, including Instagram and Facebook. ECF No. 8 ¶ 41. Then another person reposted the text again but added the words "@penncrest_students," transforming the post into a "direct threat." Id. ¶ 19. This "doctored post" then made the rounds on social media platforms. Id. ¶ 42.

The same day, Pennsylvania State Police interviewed G.S. and his family. Id. ¶ 43. G.S. was taken into custody. Id. ¶ 44. The School District was told by the police that G.S. was in custody, but the School District did not inform the school community of that fact until after the start of the school day on Monday, April 2, 2018. Id. ¶¶ 44-47.

G.S. was suspended from school for 10 days and then expelled on August 23, 2018 after expulsion proceedings. Id. ¶¶ 48, 59-60; see also ECF No. 11-1 Ex. 1 (adjudication of the Board of School Directors). G.S. claims that the school had no basis to expel him, rather the school was retaliating against him for his successful assertion of his federal rights under the McKinney-Vento Act in a previous lawsuit. ECF No. 8 ¶ 21. G.S.

2

also claims that the school had previously made and then repeated false accusations that he had made a school shooting threat.  Id. ¶¶ 25-28.

G.S. brought multiple causes of action in his First Amended Complaint.  Seven are federal claims brought under federal question jurisdiction, and two are state law claims that are brought under supplemental jurisdiction.  G.S. variously alleges Defendants:  violated his rights under the First and Fourteenth Amendments (Counts I to VI), including punishing him despite his making protected speech, and enforcing facially and as-applied overbroad and vague content restrictions; retaliated against him for his previous successful assertion of his civil rights under the McKinney-Vento Act (Count VII); deprived him of due process under Pennsylvania law during the suspension and expulsion proceedings (Count VIII); and defamed him on several occasions, beginning in 2015 (Count IX).

Defendants filed an Answer, and then moved for Judgment on the Pleadings on just the state law claims, Counts VIII and IX.  ECF Nos. 11, 13.  Defendants' briefing included a near half-alphabet of arguments, from A to K, in support of dismissing or limiting the two state law claims.  ECF No. 13-1 at 7-29.  G.S. opposed the motion, and Defendants filed a Motion for Leave to File a Reply.  ECF Nos. 17, 18.

Argument "A" raised by Defendants asserted that Count VIII was "a supposed appeal of the School Board's adjudication expelling G.S. as a student." ECF No. 13-1 at 7-11. Defendants argued that under Pennsylvania law, a student wishing to appeal a school board's expulsion decision must file an action in the appropriate state court of common pleas. Id. at 10 n.3.

In light of the issues raised in Defendants' Argument "A," the Court issued a Rule to Show Cause "as to whether the Court should find that Younger abstention applies to this case." ECF No. 20 ¶ 1. The parties responded to the Rule to Show Cause, and the issue is ripe for disposition. ECF Nos. 21, 22.

After careful consideration of the procedural background of this case, Pennsylvania law regarding school hearings and appeals therefrom, and jurisdictional constraints imposed by Supreme Court and Third Circuit precedent, the Court finds that Younger abstention is necessary and the Court cannot proceed to hear any of the federal claims in Counts I to VII or the state law claim in Count VIII. As a result, the entire case must be dismissed because the Court lacks jurisdiction over the remaining defamation claim in Count IX.

## II.  LAW

### A.  **Younger** Abstention

The doctrine of <u>Younger</u> abstention, <u>Younger v. Harris</u>, 401 U.S. 37 (1971), provides that as a matter of policy a federal court must abstain from deciding matters where the federal court's decision would cause undue interference with pending state proceedings.  <u>See</u> <u>Sprint Commc'ns, Inc. v. Jacobs</u>, 571 U.S. 69, 72-73 (2013); <u>New Orleans Pub. Serv., Inc. v. Council of City of New Orleans</u>, 491 U.S. 350, 359 (1989) ("<u>NOPSI</u>") ("[T]here are some classes of cases in which the withholding of authorized equitable relief because of undue interference with state proceedings is 'the normal thing to do.'") (quoting <u>Younger</u>, 401 U.S. at 45); <u>Lazaridis v. Wehmer</u>, 591 F.3d 666, 670 (3d Cir. 2010) ("In certain circumstances, district courts must abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would offend principles of comity by interfering with an ongoing state proceeding.").

<u>Younger</u> abstention is founded on "the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding."  <u>Mitchum v. Foster</u>, 407 U.S. 225, 243 (1972).  Comity is the "proper respect for state functions," and recognizes "the fact that the entire country is made up of a Union of separate state

5

governments, and a continuance of the belief that the National
Government will fare best if the States and their institutions
are left free to perform their separate functions in their
separate ways."  Younger, 401 U.S. at 44.  Comity reflects a
proper "sensitivity to the legitimate interests of both State
and National Governments, and in which the National Government,
anxious though it may be to vindicate and protect federal rights
and federal interests, always endeavors to do so in ways that
will not unduly interfere with the legitimate activities of the
States."  Id.

The doctrine of Younger abstention originally
concerned only "parallel, pending state criminal proceeding."
Sprint, 571 U.S. at 72.  The Supreme Court has extended the
doctrine to cover "particular state civil proceedings that are
akin to criminal prosecutions or that implicate a State's
interest in enforcing the orders and judgments of its courts."
Id. at 72–73 (citations omitted).

The Supreme Court recently revisited the application
of the doctrine in Sprint.  Sprint teaches that the scope of
Younger is not so broad that a federal court should routinely
abstain merely because there are pending state court
proceedings.  Id. at 73.  Rather, the circumstances that fit
within the Younger doctrine are "exceptional" and are limited in

scope to "state criminal prosecutions, civil enforcement proceedings, and civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." Id. at 73, 78 (internal quotation marks omitted) (quoting NOPSI, 491 U.S. at 368). Indeed, a federal court having jurisdiction over a case has a "virtually unflagging" "'obligation' to hear and decide [that] case." Id. at 77 (quoting Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976)).

The types of civil enforcement proceedings to which Younger might apply are those that are "akin to a criminal prosecution in important respects." See id. at 79 (quotation marks omitted) (quoting Huffman v. Pursue, Ltd., 420 U.S. 592, 604 (1975)). As the Supreme Court explained, "[s]uch enforcement actions are characteristically initiated to sanction the federal plaintiff, i.e., the party challenging the state action, for some wrongful act." Id. In these types of cases, "a state actor is routinely a party to the state proceeding and often initiates the action" in its sovereign capacity. Id. Furthermore, "[i]nvestigations are commonly involved, often culminating in the filing of a formal complaint or charges." Id. at 79-80. A court should "also consider whether the State could have alternatively sought to enforce a parallel criminal

statute" for the federal plaintiff's conduct.  <u>ACRA Turf Club,</u>

<u>LLC v. Zanzuccki</u>, 748 F.3d 127, 138 (3d Cir. 2014) (citing

<u>Huffman</u>, 420 U.S. at 604).

Once a federal court has determined that there are

state proceedings bearing the appropriate character, the court

must then consider whether three conditions are met to determine

whether <u>Younger</u> applies:  1) there is an ongoing state judicial

proceeding; 2) the proceeding implicates important state

interests; and 3) the plaintiff has an adequate opportunity in

the state proceeding to raise constitutional issues.  <u>See</u>

<u>Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n</u>, 457 U.S.

423, 432 (1982).  The three <u>Middlesex</u> conditions are not

dispositive, but are "<u>additional</u> factors appropriately

considered by the federal court before invoking <u>Younger</u>."

<u>Sprint</u>, 571 U.S. at 81 (emphasis in original).

When an administrative proceeding is "judicial in

nature from the outset," it is not necessary for it to have

progressed to review by a state court before <u>Younger</u> can apply.

<u>NOPSI</u>, 491 U.S. at 370 (quoting <u>Ohio Civil Rights Comm'n v.</u>

<u>Dayton Christian Sch., Inc.</u>, 477 U.S. 619, 627 (1986)).  "For

<u>Younger</u> purposes, the State's trial-and-appeals process is

treated as a unitary system, and for a federal court to disrupt

its integrity by intervening in mid-process would demonstrate a

lack of respect for the State as sovereign." Id. at 369. "A
necessary concomitant of Younger is that a party wishing to
contest in federal court the judgment of a state judicial
tribunal must exhaust his state appellate remedies before
seeking relief in the District Court." Id. (quotation marks and
alterations omitted) (quoting Huffman, 420 U.S. at 608).

In the Third Circuit, a state proceeding is ongoing or
pending for Younger purposes "where a coercive administrative
proceeding has been initiated by the State in a state forum,
where adequate state-court judicial review of the administrative
determination is available to the federal claimants, and where
the claimants have chosen not to pursue their state-court
judicial remedies, but have instead sought to invalidate the
State's judgment by filing a federal action." O'Neill v. City
of Phila., 32 F.3d 785, 791 (3d Cir. 1994); see also Gentlemen's
Retreat, Inc. v. City of Phila., 109 F. Supp. 2d 374, 378-79
(E.D. Pa. 2000), aff'd, 276 F.3d 577 (3d Cir. 2001) ("[A]lthough
there is no ongoing action at the present time in any state or
administrative court, defendants have established that there are
'pending' judicial proceedings, to which plaintiff was a party
and with which this proceeding would interfere.").

In O'Neill, the Third Circuit rejected two federal
plaintiffs' attempts to circumvent the proper state appeals

process for appealing the issuance of parking tickets.  O'Neill,
32 F.3d at 786, 790-91.  The two plaintiffs had, at separate
times, requested and received administrative hearings to contest
numerous parking tickets.  Id. at 788.  After failing to
successfully challenge the tickets at the administrative level,
the two plaintiffs did not appeal to the court of common pleas,
as Pennsylvania law provided, but instead filed a lawsuit
against the City of Philadelphia in federal district court
pursuant to § 1983.  Id. at 787-88.  During the litigation, the
district court "declined the City's invitation to abstain from
exercising jurisdiction over [the] action."  Id. at 786.
Following partial summary judgment, the City appealed, and the
Third Circuit requested briefing on the Younger issue.  Id. at
786, 789.  The Third Circuit ultimately concluded that "the
district court abused its discretion in refusing to abstain
under Younger and in reaching the merits of [the federal
plaintiffs'] due process claim."  Id. at 787.  As a result, the
Third Circuit vacated and remanded the case with instructions to
the district court to abstain pursuant to Younger and to dismiss
the complaint.  Id. at 793.

        In applying Younger to administrative proceedings,
the Third Circuit expressly relied on the Supreme Court's
decision in Huffman by considering that "state appellate review

of a state court judgment must be exhausted before federal court intervention is permitted." Id. at 791. The Third Circuit held that the aggrieved federal plaintiffs could not "forego state-court judicial review of the agency's decision in order to apply for relief in federal court." Id. at 790-91.

The Third Circuit succinctly explained why the principles of Younger apply in state administrative proceedings. "First, federal intervention before a state court has had the opportunity to review an agency's decision" casts "an aspersion on the capabilities and good faith of state appellate courts," and is "a disruption of the State's efforts to protect interests which it deems important." Id. at 791 (quotation marks omitted) (quoting Huffman, 420 U.S at 608). Second, federal intervention that "annul[s] the result of an agency determination . . . deprive[s] the States of a function which quite legitimately is left to them, i.e., the disposition of constitutional issues which arise in litigation over which they have jurisdiction." Id. (quotation marks omitted) (quoting Huffman, 420 U.S at 609). Third, "the state courts may construe state law in a way which renders a constitutional decision unnecessary." Id. (quotation marks omitted) (quoting Alleghany Corp. v. Pomeroy, 898 F.2d 1314, 1317 (8th Cir. 1990)). Fourth, the "interests of comity are advanced, and friction reduced, if the courts of a state,

rather than the federal courts, determine that the United States Constitution requires the state to alter its practices." Id. (quotation marks omitted) (quoting Alleghany, 898 F.2d at 1318).

In this case, it is the state's interest in providing education to its citizens that is at issue. "Providing public schools ranks at the very apex of the function of a State." Wisconsin v. Yoder, 406 U.S. 205, 213 (1972); see also Williams v. Red Bank Bd. of Ed., 662 F.2d 1008, 1017 (3d Cir. 1981) ("The state's interest in education is a substantial one . . . ."), overruling on other grounds recognized by Schall v. Joyce, 885 F.2d 101, 108 (3d Cir. 1989); Harper v. Pub. Serv. Comm'n of W. Va., 396 F.3d 348, 354 (4th Cir. 2005) ("Interests like education, land use law, family law, and criminal law lie at the heart of state sovereignty . . . ."); Vereen, ex rel. Vereen v. Norristown Area Sch. Dist., Civ. A. No. 85-5233, 1986 WL 1522, at *2 (E.D. Pa. Feb. 5, 1986) ("School board activities are traditionally regarded as important local functions."). Indeed, the Constitution of Pennsylvania mandates that "[t]he General Assembly shall provide for the maintenance and support of a thorough and efficient system of public education to serve the needs of the Commonwealth." Pa. Const. art. III, § 14.

Even if a case meets all of the predicates for Younger abstention to be possible, there are certain exceptions which

prevent its application and allow a federal court to determine whether federal injunctive relief is warranted. Mitchum, 407 U.S. at 230. The exceptions include "where irreparable injury is 'both great and immediate,' where the state law is 'flagrantly and patently violative of express constitutional prohibitions,' or where there is a showing of 'bad faith, harassment, or other unusual circumstances that would call for equitable relief.'" Id. (quotation marks and internal quotations omitted); see also Cutler v. Amber Green, 754 F. App'x 96, 101 (3d Cir. 2018) (non-precedential).

"[A] plaintiff seeking to avoid Younger must affirmatively demonstrate the justification for application of an exception." Kirschner v. Klemons, 225 F.3d 227, 236 (2d Cir. 2000); see also Juidice v. Vail, 430 U.S. 327, 338 (1977) (requiring proof of bad faith or harassment); Perez v. Ledesma, 401 U.S. 82, 85 (1971) ("Only in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown is federal injunctive relief against pending state prosecutions appropriate."); Phelps v. Hamilton, 59 F.3d 1058, 1066 (10th Cir. 1995) (holding that the plaintiff "has a heavy burden of proof" to show that the bad faith or harassment

exception applies); <u>Collins v. Kendall Cnty., Ill.</u>, 807 F.2d 95, 98 (7th Cir. 1986) (explaining that to make a showing of bad faith a plaintiff must allege specific facts, more than mere allegations leading to a conclusory finding, and the specific evidence must show that the proceedings were brought in bad faith for the purpose of retaliating).

### B.   Pennsylvania Law on Expulsions from School

Under Pennsylvania law, a school is required to hold a formal hearing before a student can be excluded from school for longer than 10 days.  22 Pa. Code §§ 12.6(b)(2), 12.8(b); <u>Haas v. W. Shore Sch. Dist.</u>, 915 A.2d 1254, 1258 (Pa. Commonw. Ct. 2007).  A student who is excluded for between 1 and 10 days is "suspended," but the Pennsylvania Code "does not provide any recourse" to appeal such a decision; conversely, a student who is excluded for 10 or more days is "expelled," and does have the right to appeal the decision of the formal hearing.  <u>See</u> <u>In re JAD</u>, 782 A.2d 1069, 1071 (Pa. Commonw. Ct. 2002); 22 Pa. Code §§ 12.6(b), 12.8(b)(10), 12.8(c).

Pennsylvania deems a school board's formal hearing decision as a local agency adjudication.  2 Pa. Cons. Stat. §§ 101 <u>et seq.</u>; <u>Haas</u>, 915 A.2d at 1258.  A party may appeal such an adjudication to the appropriate court of common pleas, and if still aggrieved thereafter to the commonwealth court.  2 Pa.

Cons. Stat. §§ 751-752; 42 Pa. Cons. Stat. §§ 762, 933(a)(2);
Haas, 915 A.2d at 1258.  A party must appeal the formal hearing
decision to the court of common pleas within thirty days after
the entry of the adjudication.  42 Pa. Cons. Stat. § 5571(b);
A.S. v. Office for Dispute Resolution (Quakertown Cmty. Sch.
Dist.), 88 A.3d 256, 261-62 (Pa. Commw. Ct. 2014).

A student may raise constitutional issues in an appeal
of the expulsion decision.  2 Pa. Cons. Stat. § 753(a) ("A party
who proceeded before a local agency under the terms of a
particular statute, home rule charter, or local ordinance or
resolution shall not be precluded from questioning the validity
of the statute, home rule charter or local ordinance or
resolution in the appeal . . . ."); see also J.S. ex rel. H.S.
v. Bethlehem Area Sch. Dist., 757 A.2d 412, 418-24 (Pa. Commw.
Ct. 2000) (considering an expelled student's constitutional
challenges to his expulsion), aff'd, 807 A.2d 847 (Pa. 2002);
Gentlemen's Retreat, 109 F. Supp. 2d at 380 & n.6 (citing
various Pennsylvania Commonwealth Court appeals and 2 Pa. Cons.
Stat. § 753).

## III. DISCUSSION

### A.  Defendants' arguments concerning the Rule to Show Cause on Younger abstention

In response to the Rule to Show Cause, Defendants
argued that Younger abstention applies to the whole case.  ECF

No. 21 at 1.  According to Defendants, the case involves "the
state's strong interest in educational matters," and G.S. has
"the ability to litigate the issues raised in his First Amended
Complaint."  Id.

Defendants argued that all three Middlesex factors are
met:  the expulsion proceedings are judicial in nature and are
deemed pending; the state has an interest in regulating public
education, including enforcement of the standards and procedures
that apply to expulsion proceedings; and G.S. can assert
constitutional rights in the state proceedings.  Id. at 3-4.

Furthermore, Defendants argued that none of the
exceptions to Younger apply:  the state proceedings are not
motivated by bad faith or brought to harass; there is no law at
issue that is flagrantly and patently unconstitutional; and
there is no extraordinarily pressing need for immediate
equitable relief.  Id. at 4-5.

Defendants concluded that "the Court should abstain
from hearing this case."  Id. at 5.

## B.  G.S.'s arguments concerning the Rule to Show Cause on Younger abstention

G.S. responded to the Rule by arguing that the Court
is not required under Younger to abstain from hearing Count VIII
because there is no risk of undue interference with state

proceedings. ECF No. 22 at 1. G.S. argued that <u>Younger</u>
abstention is only justified when there is a need to avoid "the
harms to the principles of comity and federalism that arise when
federal proceedings risk 'undue interference' with state
proceedings." <u>Id.</u> at 2.

G.S. expressly "acknowledge[d] that his expulsion
proceeding is a civil enforcement proceeding and that the three
<u>Middlesex</u> factors are satisfied." <u>Id.</u> at 3. "But," G.S.
argued, "abstention [is] still not warranted in this case
because the proceedings here do not risk 'undue interference'
with pending state court proceedings." <u>Id.</u>

G.S. went on to explain that he brought all of his
related claims together rather than institute parallel
proceedings on claims that "are related by a close factual
nexus." <u>Id.</u> at 4. G.S. argued that he "did not . . . ignore
the requirements for a state court appeal . . . and bring a
federal action intended to circumvent those state court
procedures." <u>Id.</u> Rather, G.S. argued, he filed all of his
claims in federal court simply "to promote efficiency, avoid
waste, and prevent duplication of efforts." <u>Id.</u> at 5. G.S.
further stated that he brought this case within the time limit
set by Pennsylvania law for appeals of expulsions. <u>Id.</u> at 4.
G.S. also argued that the federal court will have to rule on

Count VIII by applying clear and well-established Pennsylvania law.  Id. at 4-5.  According to G.S., federal courts have declined to abstain in cases where "federal claims and a state expulsion appeal [were] brought simultaneously in federal court," and there was no "undue interference" in state proceedings.  Id. at 5 (citing M.R. v. Bd. of Sch. Comm'rs of Mobile Cnty., CIV. A. No. 11-0245-WS-C, 2012 WL 3778283, at *6 (S.D. Ala. Aug. 30, 2012); G.R. v. Colonial Sch. Dist., 17-cv-02749, slip op. at 13-14 (E.D. Pa. May 23, 2018).

G.S. did not argue that any of the exceptions to Younger abstention apply in this case.  G.S. concluded that "this case does not jeopardize principles of comity and federalism" and requested "that the Court not abstain from the exercise its undisputed jurisdiction over all of Plaintiffs' claims."  Id. at 5.

C.  **Younger abstention applies in this case**

Properly considered, this case is an appeal of the School District's decision to expel G.S.  The First Amended Complaint contains three groups of claims that are related by certain common factual issues:  the federal claims concern G.S.'s First Amendment rights; Count VIII concerns G.S.'s procedural and evidentiary rights in the expulsion hearing; and Count IX concerns G.S.'s rights against defamation.  While Count

18

VIII is a procedural attack on the expulsion, the First Amendment claims are a substantive attack on the basis for G.S.'s expulsion.  Thus, G.S. is challenging both the merits of his expulsion and the means by which he was expelled.  Although he has not appealed directly to the state court to argue that there was no substantive basis for his expulsion, he has brought such a challenge here in claims that would be made in a direct challenge in state court.  In other words, the substantive challenge to the expulsion has been brought in claims dressed up as § 1983 First Amendment claims.

The proper place for a Pennsylvanian student to appeal both the procedural and substantive aspects of an expulsion is to the court of common pleas.  22 Pa. Code §§ 12.6(b)(2), 12.8(b); Haas, 915 A.2d at 1258.  Here, if G.S. prevails on the grounds that his speech was protected, he will have necessarily undermined the expulsion without giving the state court system its proper opportunity to review the matter.  Given the allegations for which G.S. seeks redress, and the state's strong interest in regulating education and appropriately disciplining students, a full-fledged Younger analysis is warranted.

Under Supreme Court jurisprudence, the Court must engage in a three-step inquiry.  At step one, the Court must determine whether the case is a state criminal prosecution; a

civil enforcement proceeding; or a civil proceeding concerning the state courts' ability to perform judicial functions.  See Sprint, 571 U.S. at 78.

At step two, the Court determines whether the three Middlesex conditions are met:  1) the proceeding is ongoing; 2) implicates important state interests; and 3) provides an adequate opportunity to raise federal challenges.  Id. at 81.

At step three, the Court determines whether one of four exceptions are met:  (1) an irreparable injury that is both great and immediate; (2) the state law flagrantly and patently violates express constitutional prohibitions; (3) there is a showing of bad faith or harassment; or (4) other unusual circumstances call for equitable relief.  Mitchum, 407 U.S. at 230.

## 1.    Type of proceeding

The Court begins by considering whether the state proceeding is apt for further Younger analysis.  The Court can readily dispense with the first and third categories of proceedings because this case is neither a state criminal prosecution nor a civil proceeding concerning the state courts' ability to perform judicial functions.  See Sprint, 571 U.S. at 78.  Thus, the Court must consider whether the state proceedings

fall within the second category of a civil enforcement proceeding that is "akin to a criminal prosecution in important respects." Id. at 79.

Pennsylvania, acting in its sovereign capacity through Rose Tree-Media School District, initiated the disciplinary proceedings to determine whether to punish G.S. for making statements that the School District considered were terroristic threats. There was an investigation followed by a formal hearing which included many protections that were the same or similar as those that a criminal defendant would be afforded, including: notification of the charges; the right to be represented by counsel; the right to be presented with the names of the witnesses against the student, and any statements made by those witnesses; the right to request the witnesses appear at the hearing and answer questions or be cross-examined; the right to testify and to present witnesses; and the right to appeal. See 22 Pa. Code § 12.8(b). Adding some gloss to the foregoing analysis, the Court observes that the police were involved in the incident leading to the expulsion.

Courts in other circuits have come concluded that disciplinary proceedings conducted by educational institutions, albeit universities, are apt for Younger abstention. See Doe v. Univ. of Ky., 860 F.3d 365, 370 (6th Cir. 2017); Sanchez v.

Ariz. Bd. of Regents, No. CV-15-01591-PHX-JAT, 2015 WL 6956288, at *3 (D. Ariz. Nov. 10, 2015).

In Doe, the Sixth Circuit affirmed the Eastern District of Kentucky's decision that Younger abstention applied to a case involving an underlying student disciplinary proceeding. See Doe, 860 F.3d at 369-70. The Sixth Circuit summarized key aspects of the disciplinary proceeding that rendered the proceeding akin to a criminal prosecution in important respects. First, "the disciplinary proceeding was brought to sanction Doe and could have [had] severe consequences, such as expulsion and future career implications." Id. at 370. Second, the state was "a party to the proceeding and initiated the action." Id. Third, "the case against Doe involved a filed complaint, an investigation, notice of the charge, and the opportunity to introduce witnesses and evidence." Id.

The Sixth Circuit gave short shrift to the appellant's argument that the disciplinary proceedings lacked "some of the due process protections for a criminal trial, such as having an attorney cross-examine witnesses and being able to subpoena witnesses . . . ." Id. The court noted that cross-examination by the hearing officer was permitted, and that the student could submit questions to be asked. Id. Further, the student was

permitted to have counsel present at the hearing.  Id.  The
court concluded that the differences between the school
disciplinary proceedings at issue and a typical criminal
prosecution were insufficient to place the proceedings outside
of the scope of Younger:  "while the proceeding may lack all the
formalities found in a trial, it contains enough protections and
similarities to qualify as 'akin to criminal prosecutions' for
purposes of Younger abstention."  Id.

        The Court concludes that the formal hearing and appeal
are the type of state proceedings to which Younger abstention
could be appropriate.

### 2.  **Middlesex** conditions

        The Court must consider whether all three of the
Middlesex conditions are met.  First, under Third Circuit
precedent, the state proceedings are deemed pending.  O'Neill,
32 F.3d at 791.  The expulsion was a coercive administrative
proceeding initiated by the State, through the school, in a
state forum i.e. the School Board hearing.  Furthermore,
Pennsylvania law provides adequate state-court judicial review
of the expulsion.  Finally, G.S. chose not to pursue his state-
court judicial remedies in the Court of Common Pleas, but
instead sought to invalidate the State's judgment by filing a
federal action.

Second, the state proceedings implicate important state interests.  Education, educational policies, and discipline in schools are of the highest interest to Pennsylvania.

Third, Pennsylvania law allows G.S. to raise his constitutional claims in an appeal of the expulsion in the Court of Common Pleas.

In sum, the Court finds that all of the <u>Middlesex</u> conditions are met by the facts and circumstances of this case. Accordingly, <u>Younger</u> abstention is proper unless an exception applies.

### 3.    Exceptions

At the final stage of <u>Younger</u> analysis, the Court considers whether an exception applies to prevent abstention. Defendant argued that none of the exceptions apply in this case. Despite this, G.S. did not argue that any of the recognized exceptions applies to this case.[1]  As such, <u>Younger</u> abstention is therefore proper.

---

[1]      Defendants submitted their brief first and argued that none of the exceptions applied, and therefore the Court should abstain from hearing the case.  ECF No. 21 at 4-5.  One week later, G.S. filed his response, but did not invoke any of the exceptions.  <u>See</u> ECF No. 22.

For completeness, the Court will discuss two other issues raised by G.S.  The only argument made by G.S. to counter the application of <u>Younger</u> abstention was an "undue interference" argument.  According to G.S., even if all three <u>Middlesex</u> conditions are met, the Court must consider whether the interference in the state court proceedings would be "undue interference," and if not, abstention is not justified.  ECF No. 22 at 3.

G.S.'s argument fails for two reasons.  First, a lack of "undue interference" is not a recognized exception.  Second, the argument is erroneous, apparently being based on a misunderstanding of the Third Circuit's discussion of <u>Sprint</u> in its opinion in <u>ACRA</u>, 748 F.3d at 136-38.

In <u>ACRA</u>, the Third Circuit explained that <u>Younger</u> abstention applies "only in 'exceptional' circumstances, where 'the prospect of undue interference with state proceedings counsels against federal relief," and that the exceptional circumstances "arise only where the federal action interferes with one of [the] three categories of cases."  <u>ACRA</u>, 748 F.3d at 136 (citations omitted).  As is clear from <u>ACRA</u>, the prospect of undue interference necessarily arises in the three categories of cases, and there is no extra test to be performed after <u>Middlesex</u> analysis.

Contrary to G.S.'s argument, if the Court were to decide the merits of G.S.'s First Amendment claims, it would be that Court that necessarily unduly interfered with state proceedings precisely because of the nature of those proceedings and the relief sought. The integrity of Pennsylvania's appeals process for this type of case would be absolutely disrupted by the Court's intervention mid-process, and the Court would demonstrate a lack of respect for the sovereignty of Pennsylvania. See NOPSI, 491 U.S. at 369.

The final points raised in G.S.'s brief were "efficiency" arguments. ECF No. 22 at 4-5. The only reasons provided by G.S. for bringing "all of his related claims together rather the instituting parallel proceedings" were "to promote efficiency, avoid waste, and prevent duplication of efforts." ECF No. 22 at 4. But such efficiency arguments, like undue interference, are not one of the exceptions to Younger, nor does efficiency play any other role in Younger analysis.

## IV.  CONCLUSION

The Court finds that this case is one of the exceptional cases where abstaining in this matter is required under Younger and its progeny. Accordingly, the Court abstains on Counts I to VIII. By virtue of the Court's abstention, the Court lacks jurisdiction over the only remaining claim, the

defamation claim in Count IX, because that claim was brought in federal court only on supplemental jurisdiction.  The Court will therefore dismiss the First Amended Complaint in its entirety.